IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRANDY MILES                           :
                                       :
                                       :
        v.                             :    Civil No. CCB-12-854
                                       :
                                       :
DAVITA RX, LLC, et al.                 :
                                       :
                                       :
                                       :

## MEMORANDUM

Now pending before the court is a motion for summary judgment filed by DaVita Rx, LLC, Inc. ("DaVita"), and Richard Rowe ("Mr. Rowe") (collectively, the "defendants") in this suit brought by plaintiff Brandy Miles ("Ms. Miles").[1] Ms. Miles, a former DaVita employee, alleges hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., and Maryland law, Md. Code Ann., State Gov't § 20-606, against DaVita. Ms. Miles also brings assault and battery claims against Mr. Rowe, her former supervisor. For the reasons stated below, the defendants' motion will be denied.[2]

## BACKGROUND

Brandy Miles was hired as an Administrative Assistant/Patient Care Technician with DVA Healthcare Renal Care, Inc., doing business as Catonsville Dialysis Center, in April 2009. DVA Healthcare Renal Care, Inc. is a wholly owned subsidiary of DaVita, Inc., a Delaware corporation headquartered in Baltimore, Maryland, that operates dialysis clinics throughout the

---

[1] Ms. Miles has filed a motion for leave to file an amended complaint naming DVA Healthcare Renal Care, Inc., and DaVita, Inc., as the proper corporate defendants in this case. (ECF No. 16.) DaVita is not prejudiced by the change and in fact acknowledged that it was the appropriate defendant in DaVita's early filings; therefore, the court will grant Ms. Miles's motion.
[2] Ms. Miles has filed a motion for partial summary judgment on Count I (hostile work environment claim) (ECF No. 25), which will also be denied.

1

United States. Ms. Miles was hired to work forty hours per week, thirty-two as an Administrative Assistant and eight as a Patient Care Technician (PCT)-in-training. She reported to Richard Rowe, the facility administrator at the Catonsville Dialysis Center. (*See* ECF No. 15, Ex. I.)

Ms. Miles had been working at DaVita only a few weeks when Mr. Rowe began behaving inappropriately toward her. Mr. Rowe would place his hands on Ms. Miles's shoulder while she was working at her computer and squeeze as if he was giving her a massage while he directed her to complete tasks on the computer. (ECF No. 25, Ex. 13, 141-42.) Mr. Rowe did this on several occasions over the course of Ms. Miles's employment. (*Id.* at 142.) On May 18, 2009, Mr. Rowe asked Ms. Miles if she was married and remarked, "if so[,] he's lucky." (ECF No. 15, Ex. J, 7.) On June 23, 2009, Mr. Rowe commented that her hair color was "sexy." (*Id.*) Mr. Rowe frequently commented on Ms. Miles's makeup and how "appealing" it looked. (*Id.*) Mr. Rowe made statements about Ms. Miles's hair being "sexy" and about how nice she looked on a regular basis. (*Id.*)

Mr. Rowe also began using nicknames to refer to Ms. Miles shortly after she began working at DaVita. Mr. Rowe called Ms. Miles his "work wife" on a daily basis. (ECF No. 25, Ex. 13, 86.) If he was running late, he would call in and ask, "how's home, honey?" (*Id.*) Mr. Rowe also referred to Ms. Miles as "little bits" at least twice a week. (*Id.* at 87.) Mr. Rowe used these nicknames in the presence of the facility's clinical coordinator and the other administrative assistant. (*Id*. at 88.) According to Ms. Miles, Mr. Rowe told the new male clinical coordinator to call Ms. Miles his "work wife," but the clinical coordinator declined. (ECF No. 15, Ex. J, 6.)

On July 1, 2009, Ms. Miles was backing out of the chart room carrying a heavy box and Mr. Rowe positioned himself in the doorway so that Ms. Miles backed into Mr. Rowe's crotch and she felt his penis on her buttocks. (ECF No. 25, Ex. 13, 98-101.) When Ms. Miles confronted

him, Mr. Rowe simply laughed. (*Id.*) A similar incident occurred almost a year and a half later, in December 2010, after Ms. Miles went into a small office to retrieve a box of paper. (*Id.* at 127-28, 286-87.)

In January 2010, Mr. Rowe told a group of female employees including Ms. Miles that he could fire them whenever he felt like it. (ECF No. 15, Ex. H, 90-91; Ex. J, 6.) When Ms. Miles didn't respond and didn't look at him, he commanded her to "[l]ook at me when I'm talking to you." (*Id.*) Mr. Rowe also referred to himself as the "master" and to Ms. Miles and the other administrative assistant as his "slaves," a statement he repeated on several occasions. (*Id.*) When the time came for Ms. Miles to receive her annual evaluation, Mr. Rowe required Ms. Miles to walk outside behind the back of the dialysis center and stand alongside trash dumpsters while he reviewed her evaluation with her. (ECF No. 15, Ex. J, 1.)

In April 2010, Ms. Miles's work hours were reduced from 40 hours to 32 hours per week. Mr. Rowe informed Ms. Miles that her hours had been cut for budgetary reasons. Ms. Miles resumed working 40 hours per week in April 2011, when she began assisting James Seaver, the facility's clinical coordinator, with scheduling patients. (ECF No. 25, Ex. 13, 142.)

In May or June of 2010, Mr. Rowe approached Ms. Miles from behind, getting so close to her that she could feel his breath on her neck, and she thought he was about to kiss her. Ms. Miles turned around before Mr. Rowe could do so. (*Id.* at 102-04; Ex. J, 7.) In another incident around the same time, Mr. Rowe approached Ms. Miles while she was bent over the fax machine and grabbed her waist. He withdrew his hands and apologized just as Ms. Miles spun around to stop him. (ECF No. 25, Ex. 13, 106-07; Ex. J, 7.) A few months later, in November, Mr. Rowe asked Ms. Miles to "model" DaVita-branded clothing for him before he would purchase them for staff. (ECF No. 25, Ex. 13, 277-78.) Mr. Rowe also came into Ms. Miles's office on several

3

occasions to tell her about how the prior evening he ran bathwater for his wife and gave her chocolates but his wife still went to sleep before he was able to "pop a cork." (ECF No. 15, Ex. J, 7-9.)

Ms. Miles also observed Mr. Rowe sexually harass other female employees. Once Ms. Miles witnessed Mr. Rowe reach over and rub the other administrative assistant's thigh while they were riding in his car. (*Id.* at 8.) Ms. Miles also heard Mr. Rowe make comments to a social worker at the facility about how "sexy" her shoes were or how nice her legs looked in her shoes. (*Id.*)

Ms. Miles complained multiple times over the course of a year about Mr. Rowe's conduct to Clinical Coordinator James Seaver, to whom she reported for certain duties and when Mr. Rowe was absent. (ECF No. 25, Ex. 13, 109-11, 116-17.) Mr. Seaver responded that Ms. Miles needed to "tell someone." (*Id.* at 117.) According to Ms. Miles, Mr. Seaver "never once" told her that he was not the appropriate person to talk to about the harassment she endured. (*Id.*) Ms. Miles asserts that she did not report the harassment to any other members of DaVita management for fear of retaliation. (*Id.* at 117-18.) She also claims that she believed reporting Mr. Rowe's behavior to Janis Bonnet, the local human resources manager, would have been futile because Ms. Bonnet and Mr. Rowe were "dear friends" and Ms. Bonnet had failed to act in response to Ms. Miles's earlier complaints about various incidents involving Ms. Miles's coworkers. (*Id.* at 118-21.) Ms. Miles eventually consulted a doctor and took medication to cope with the emotional problems she developed as a result of Mr. Rowe's harassment. (*See id.* at 114, 139-40.)

On June 24, 2011, Ms. Miles gave DaVita two weeks' notice of her resignation. On July 5th, Ms. Miles contacted Ms. Bonnet in human resources to request an exit interview. Ms. Miles

4

asserts that she planned to inform Ms. Bonnet about Mr. Rowe's harassment at the interview. Ms. Bonnet scheduled the interview for July 8th, Ms. Miles's final day of work, but cancelled the interview via an email she sent a few hours before it was to take place. After Ms. Miles indicated that she had something important to discuss, Ms. Bonnet attempted to reschedule the exit interview for Monday, but Ms. Miles responded that she was beginning a new job and could not reschedule. Ms. Miles then ended the call with Ms. Bonnet and tried to reach Kevin Trexler, Group Vice President, and Steven Devore, Group Director. When neither man was available, she faxed a nine-page letter addressed to both of them in which she alleged that she had been sexually harassed by Mr. Rowe.

DaVita directed Ms. Bonnet to conduct an investigation into Ms. Miles's claims. Ms. Bonnet met with Mr. Rowe to discuss Ms. Miles's accusations, most of which he denied. (ECF No. 25, Ex. 4, 78-80, 102.) Ms. Bonnet asserts that she did not attempt to contact Ms. Miles after Ms. Bonnet received the complaint letter because Ms. Miles had previously refused her offer to reschedule the exit interview. (*Id.* at 103-06.) Ms. Bonnet did not interview any other DaVita employees in connection with the investigation. (*Id.* at 42-45, 50.)

Ms. Miles subsequently filed a complaint with the EEOC and received a right to sue notice in January 2012. She filed this action on March 30, 2012.[3] The court dismissed several claims in Ms. Miles's initial complaint but allowed her to proceed on her Title VII and state law sex discrimination claims against DaVita (Counts I and VI, respectively) and her assault and battery claims against Mr. Rowe (Counts II and III, respectively). On December 3, 2012, the defendants moved for summary judgment on Counts I, II, and VI.

---

[3] Ms. Miles's initial complaint alleged hostile work environment under Title VII against DaVita and Mr. Rowe (Count I), assault and battery against Mr. Rowe (Counts II and III) and DaVita (Count IV), negligent supervision against DaVita (Count V), sex discrimination in violation of state law against DaVita and Mr. Rowe (Count VI), and breach of contract against DaVita (Count VII). She filed an amended complaint on December 11, 2012.

5

# ANALYSIS

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

**Discussion**

<u>Title VII Claims</u>

*Hostile Work Environment*

Ms. Miles alleges that Mr. Rowe subjected her to a hostile work environment based on her sex in violation of Title VII. "In order to make out a hostile work environment claim based on sex, 'a plaintiff must show that the offending conduct (1) was unwelcome, (2) was because of her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, and (4) was imputable to her employer.'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 331 (4th Cir. 2011) (internal citations omitted). The parties do not dispute that Mr. Rowe's conduct was unwelcome or because of Ms. Miles's sex. Instead, the defendants argue that Ms. Miles's work environment was not sufficiently "severe or pervasive" and that Mr. Rowe's conduct is not imputable to DaVita.

In determining whether conduct is sufficiently severe or pervasive to establish an actionable hostile work environment claim, courts look to the "totality of the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). The plaintiff must show both that she "subjectively perceived the environment to be abusive" and that "the conduct was such that a reasonable person in the plaintiff's position would have found the environment objectively hostile or abusive." *Equal Emp't Opportunity Comm'n v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (internal quotation marks and citations omitted).

Turning to this case, Mr. Rowe regularly referred to Ms. Miles as his "work wife" and "little bits." He made repeated comments about her hair and makeup, describing them as "sexy" and "appealing." Mr. Rowe also referred to himself as the "master" and to the female employees he supervised as "slaves." In addition, Mr. Rowe touched Ms. Miles in a sexually suggestive

7

manner on several occasions – massaging her shoulders while she worked at her computer, putting his hands on her waist, and approaching her from behind and placing his mouth so close to her neck that she thought he might kiss her. Twice, Mr. Rowe positioned himself behind Ms. Miles while she was backing out of a room so that her buttocks bumped up against his crotch. Taking these incidents together as a whole, a reasonable jury could conclude that the harassment Ms. Miles experienced was "sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Hoyle*, 650 F.3d at 331. *See, e.g.*, *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994) (supervisor's sexual innuendos, inappropriate touching, and condescending language were sufficiently severe or pervasive to make out a sexual harassment claim).

The defendants argue that they are entitled to an affirmative defense to liability for Mr. Rowe's conduct under *Faragher*, 524 U.S. at 807-08, and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764-65 (1998). Because a defending employer may only raise the *Faragher/Ellerth* affirmative defense when no tangible employment action has been taken against the complaining employee, the court must first determine whether Ms. Miles's harassment culminated in a tangible employment action. *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 331 (4th Cir. 2012).

The Supreme Court has defined a "tangible employment action" as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761. Ms. Miles claims that she was constructively discharged and that this constituted a tangible employment action. "Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job."

8

*Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 244 (4th Cir. 1997) (internal quotation marks and citations omitted). A plaintiff must prove two elements: "deliberateness of the employer's action, and intolerability of the working conditions." *Id.* Here, Ms. Miles has presented no evidence that the defendants engaged in a "deliberate effort to force [her] to resign." *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994).[4] Because the alleged harassment did not culminate in a tangible employment action, DaVita may not be held strictly liable for Mr. Rowe's conduct.

DaVita still could be held vicariously liable for Mr. Rowe's actions, however, if DaVita is unable to establish the *Faragher/Ellerth* affirmative defense. To establish this defense, an employer must demonstrate that: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807; *see also Ellerth*, 524 U.S. at 765. With regard to the first element, the Fourth Circuit has stated that an "any [anti-harassment] policy adopted by [an] employer must be both reasonably designed and reasonably effectual." *Brown v. Perry*, 184 F.3d 388, 396 (4th Cir. 1999). Where "there is no evidence that an employer adopted or administered an anti-harassment policy in bad faith or that the policy was otherwise defective or dysfunctional, the existence of such a policy militates strongly in favor of a conclusion that the employer 'exercised reasonable care to prevent' and promptly correct sexual harassment." *Id.* (citing *Faragher*, 524 U.S. at 807); *see also Lissau v. Southern*

---

[4] Nor does the reduction in Ms. Miles's work hours constitute a tangible employment action. It is undisputed that Mr. Devore, not Mr. Rowe, made the decision to reduce Ms. Miles's hours in light of budget constraints and Ms. Miles has presented no evidence that this decision was connected to Ms. Miles's claims of harassment. Moreover, the reduction in hours occurred more than 300 days before Ms. Miles filed her complaint; therefore, any claim of constructive discharge based on the reduction in hours would be time-barred.

*Food Service, Inc.*, 159 F.3d 177, 182 (4th Cir. 1998); *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 266 (4th Cir. 2001).

Turning to the present case, the defendants distributed an employee handbook outlining the company's anti-sexual harassment policy, which instructs employees to report harassing conduct to their "immediate supervisor," local human resources manager, or the company Resource Center via a toll-free number. Ms. Miles acknowledged receiving a copy of this handbook and was therefore on notice that the policy was in effect. (*See* ECF No. 15, Ex. G.) Nonetheless, Ms. Miles raises significant questions about DaVita's administration of the policy and whether it took reasonable care to promptly correct any sexually harassing behavior of which it became aware. Although the defendants enlisted People Services Manager Janis Bonnet to conduct an investigation shortly after receiving Ms. Miles's complaint letter, the investigation was hardly the thorough, neutral process one would expect in response to such serious accusations. Ms. Bonnet met with Mr. Rowe to discuss the complaint letter, but she conducted no independent interviews with any of the other employees mentioned in the complaint as having knowledge of the facts alleged by Ms. Miles. Moreover, Ms. Bonnet and Mr. Devore, Mr. Rowe's supervisor, did nothing more than "coach[] and inform[]" Mr. Rowe not to use nicknames such as "work wife" in the workplace; he was never formally reprimanded and nothing was placed in his personnel file regarding Ms. Miles's complaints. (ECF No. 25, Ex. 4, 78.) The defendants note that no complaints about Mr. Rowe's behavior have been filed since the investigation took place. Nevertheless, the defendants' failure even to look into Ms. Miles's allegations that Mr. Rowe sexually harassed other employees undermines their claim that they exercised reasonable care to correct promptly any sexually harassing behavior. *Cf. Barrett*, 240 F.3d at 267 (employer who immediately launched an investigation and fired supervisor within a

week of confirming that he had harassed plaintiff took reasonable care to correct promptly any sexually harassing behavior); *Brown*, 184 F.3d at 398 (issuance of a restraining order, immediate investigation, and subsequent suspension of harassing employee was sufficient to establish that company exercised reasonable care).[5]

With regard to the second prong of the affirmative defense, the defendants argue that Ms. Miles unreasonably failed to use the company's internal complaint procedure to report the harassment she allegedly suffered. It is undisputed that Ms. Miles did not contact Ms. Bonnet, the local human resources manager, or the Resource Center hotline to report Mr. Rowe's behavior. Ms. Miles claims she did not contact Ms. Bonnet because she thought Mr. Rowe and Ms. Bonnet were friends and she feared retaliation based on Mr. Rowe's earlier statement to a group of employees that he could "take their jobs." (*See* ECF No. 15, Ex. H, 117, 120, 122; ECF No. 25, Ex. 13, 109-112.) Ms. Miles also contends that complaining to Ms. Bonnet would have been futile. (*Id.*) She claims that when she previously reported being threatened with physical harm by a coworker, Ms. Bonnet never followed up with her about her complaint.[6]

Ms. Miles argues that she satisfied the reporting requirement by complaining to Mr. Seaver, whom she refers to as "a direct supervisor." (ECF No. 25, Ex. 13, 110.) Ms. Miles testified that she complained on several occasions to Mr. Seaver and that she "thought from there he would take it where it needed to go." (ECF No. 15, Ex. H, 116, 118.) Ms. Miles also testified

---

[5] The defendants also argue that Ms. Miles cannot claim that the company's policy and investigation were defective when she refused to participate in the investigation. In fact, Ms. Bonnet did not attempt to interview Ms. Miles after Ms. Miles submitted her complaint letter. Ms. Bonnet claims that Ms. Miles's refusal to reschedule the exit interview – an appointment Ms. Miles made *before* she submitted her complaint – constituted a general refusal to cooperate.

[6] The court recognizes that "[a] generalized fear of retaliation does not excuse a failure to report sexual harassment" and that "[a]n employee's subjective belief in the futility of reporting a harasser's behavior is not a reasonable basis for failing to take advantage of any preventive or corrective opportunities provided by the employer." *See Barrett*, 240 F.3d at 267-68. The circumstances here, however, may constitute a reasonable and specific fear of retaliation or that Ms. Bonnet would not take action.

that she told Mr. Seaver about the harassment "because [she] felt that [he] was the closest supervisor that [she] could get to without being fired." (*Id.* at 117.)

The defendants counter that Ms. Miles's complaints to Mr. Seaver did not comply with the company's anti-harassment policy. According to the defendants, Mr. Seaver was merely one of several employees Ms. Miles assisted and he could not fire or discipline her independently; thus, he was not Ms. Miles's supervisor. The defendants rely on the definition of "supervisor" applicable to a determination of vicarious employer liability under Title VII, *see Vance v. Ball State Univ.*, 133 S. Ct. 2434 (2013); however, this definition is not determinative of the question whether Ms. Miles took advantage of her employer's anti-sexual harassment policy. Rather, the question is the meaning of the term "supervisor" as used in the policy, and the reasonableness of the policy itself. The defendants also emphasize that Ms. Miles's offer letter indicates, and Ms. Miles herself acknowledged, that Mr. Rowe was her direct supervisor, not Mr. Seaver. In addition, the defendants point to Mr. Seaver's testimony that he told Ms. Miles to contact Mr. Devore, Ms. Bonnet, or the toll-free hotline. (ECF No. 15, Ex. K, 28-30.); however, Ms. Miles disputes this claim and asserts that Mr. Seaver only told her "to tell someone." (ECF No. 15, Ex. H, 117-19.)

Considering "all facts and reasonable inferences in the light most favorable to the nonmoving party[,]"[7] Ms. Miles, the court concludes that a reasonable jury could find that Ms. Miles did not unreasonably fail to take advantage of corrective opportunities provided by her employer. Ms. Miles complained multiple times about Mr. Rowe's harassment to Mr. Seaver, whom she viewed as "a direct supervisor." (ECF No. 25, Ex. 13, 110.) Mr. Seaver was in charge when Mr. Rowe was not present, and Ms. Miles was required to report directly to Mr. Seaver in Mr. Rowe's absence or if Mr. Seaver needed her to assist him in any way. (*Id.* at 262-63.) As

---

[7] *Pueschel v. Peters*, 577 F.3d 558, 563 (4th Cir. 2009).

clinical coordinator, Mr. Seaver oversaw Ms. Miles's work creating a patient care technician and nursing schedule, for which Mr. Seaver would provide information to Ms. Miles on a daily basis. (*Id.* at 266.) Ms. Miles also assisted Mr. Seaver by administering examinations to new hires, and he provided input to Mr. Rowe for her performance evaluation. (*Id.* at 268, 263.) Given that Ms. Miles's immediate supervisor, Mr. Rowe, was the subject of her harassment complaint, her choice to reach out to Mr. Seaver, who also supervised her, was not unreasonable. Indeed, Group Director Steven Devore acknowledged during his deposition that Mr. Seaver should have reported any instances of sexual harassment of which he became aware. (ECF No. 25, Ex. 7, 86-87.) Not only did Mr. Seaver not report the harassment of which Ms. Miles complained, but, according to Ms. Miles, he did not specifically mention that she should contact upper-level management, human resources, or the company hotline. Instead, Mr. Seaver merely stated that Ms. Miles should "tell someone." In light of these facts, a reasonable jury could conclude based on Mr. Seaver's position of authority over Ms. Miles that she substantially and reasonably complied with DaVita's anti-harassment policy when she complained to Mr. Seaver about Mr. Rowe's conduct.

In sum, because a genuine dispute of material fact exists with regard to both elements of the *Faragher/Ellerth* affirmative defense, summary judgment is inappropriate as to Ms. Miles's hostile work environment claim.

*Assault*

In Maryland, assault is defined as an "attempt to cause a harmful or offensive contact with another or to cause an apprehension of such contact." *Wallace v. Poulos*, 861 F. Supp. 2d 587, 596 n.9 (D. Md. 2012). The statute of limitations for a civil action for assault is one year. Md. Code Ann. Cts. & Jud. Proc. § 5-105; *see Ford v. Douglas*, 144 Md. App. 620, 623 (2002).

Ms. Miles filed this action on March 20, 2012. The defendants argue that Ms. Miles does not cite to any specific event on or after March 19, 2011, as the basis for her assault claim, thus her claim is time-barred.

In fact, Ms. Miles testified that Mr. Rowe regularly squeezed Ms. Miles's shoulder while she worked at her computer and that this behavior continued until April 2011. (ECF No. 25, Ex. 13, 142.) Accordingly, the court will not grant summary judgment for the defendants on Ms. Miles's assault claim.

*State Sex Discrimination Claim*

Finally, Ms. Miles seeks to hold the defendants liable for sex discrimination under Maryland law, which provides that "[a]n employer may not . . . fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of . . . sex." Md. State Govt. § 20-606(a). Maryland courts look to cases construing Title VII for guidance in interpreting Maryland's antidiscrimination statutes. *See Haas v. Lockheed Martin Corp.*, 396 Md. 469, 481, 914 A.2d 735, 742 (2007). Consistent with this view, this court has relied on Title VII cases when deciding pendent state discrimination claims. *See, e.g.*, *Wise v. Gallagher Basset Servs., Inc.*, 228 F. Supp. 2d 671, 674 (D. Md. 2002). Thus, because the defendants are not entitled to summary judgment on Ms. Miles's hostile work environment claim, they are also not entitled to summary judgment on her state sex discrimination claim.[8]

---

[8] Ms. Miles has also filed two motions to compel discovery in this case (ECF Nos. 21 & 23), and the defendants have filed a related motion for leave to file a surreply (ECF No. 26). These motions involve matters that are not dispositive with respect to summary judgment and will be denied without prejudice. The court will contact counsel to discuss these issues in the context of a jury trial.

A separate Order follows.

August 23, 2013                                          /s/
Date                                         Catherine C. Blake
                                             United States District Judge